UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BAYVIEW LOAN SERVICING, LLC, | Case No. 2:14-CV-1875 JCM (GWF) |
| Plaintiff(s), | ORDER |
| v. | |
| SFR INVESTMENTS POOL 1, LLC, et al., | |
| Defendant(s). | |

Presently before the court is intervenor Bank of America, N.A.'s ("BANA") motion for summary judgment (ECF No. 110) and counter/cross-claimant SFR Investments Pool 1, LLC's ("SFR") motion for summary judgment (ECF No. 111). Corresponding responses have been filed by defendant Buena Vista Homeowners Association ("the HOA"), BANA, and SFR. (ECF Nos. 112–14).[1] Parties have filed replies. (ECF Nos. 115, 119).

Also before the court is SFR's motion to certify a question of law to Nevada's Supreme Court. (ECF No. 127). BANA filed a response (ECF No. 130), and SFR filed a reply. (ECF No. 131).

**I.   Introduction**

This case involves the non-judicial foreclosure of the real property at 7617 Amato Avenue, Las Vegas, Nevada (the "property") based on a homeowners' association lien. Relevant to the instant analysis, on October 17, 2011, "Mortgage Electronic Registration Systems, Inc. . . . assigned its interest in the senior deed of trust to BANA via an assignment of deed of trust." (ECF No. 110 at 4); *see also* (ECF No. 110-3).

---

[1] Nevada Association Services, Inc. has joined the responses of the HOA and SFR. *See* (ECF Nos. 112, 14, 29).

**James C. Mahan**
**U.S. District Judge**

1    "BANA subsequently assigned the senior deed of trust to Bayview Loan Servicing, LLC
2    (["]Bayview["]) via an assignment of deed of trust recorded on February 18, 2014."  (ECF No.
3    110 at 4).  However, Bayview then reassigned the deed of trust back to BANA, and that transaction
4    was recorded on August 31, 2015.  (*Id.*).

5    On April 5, 2011, the HOA acted through its trustee, Nevada Association Services, Inc.
6    ("NAS"), to "record[] a notice of delinquent assessment lien against the property."  (*Id.*).  On June
7    29, 2011, NAS recorded a notice of default on behalf of the HOA.  (ECF No. 110-7).  "On June
8    30, 2011, after Buena Vista recorded its notice of default, BANA requested the super priority
9    amount of Buena Vista's lien from NAS."  (ECF No. 110 at 5).

10   NAS responded by indicating an amount of $2,900.25, but that value did not itemize the
11   balance on the super-priority lien.  (*Id.*).  BANA calculated the super-priority amount for itself and
12   attempted tender of $571.50.  (*Id.*).  However, NAS rejected that tender.  (*Id.*).

13   On December 12, 2011, NAS recorded a notice of foreclosure sale, and the underlying
14   property was sold on August 10, 2012.  (*Id.*).  "SFR purchased the property at the sale for $7,000."
15   (*Id.*).

16   A complaint was filed by Bayview on November 7, 2014.  (ECF No. 1).  On March 13,
17   2015, SFR filed an answer to the complaint and asserted cross- and counterclaims for quiet title
18   and injunctive relief.  (ECF No. 41).

19   On October 29, 2015, BANA filed a motion to intervene in this action, asserting the
20   following: "BANA is the current beneficiary of the first-recorded deed of trust on the property . .
21   . at issue in this case, by virtue of an assignment of deed of trust from plaintiff [Bayview] to BANA,
22   dated August 24, 2015," that was recorded on August 31, 2015.  (ECF No. 76 at 2).  Magistrate
23   Judge Foley granted that motion on November 25, 2015.  (ECF No. 78).

24   BANA subsequently answered SFR's counterclaim and cross-claim in intervention,
25   asserting its own claims as follows: (1) a declaratory judgment against SFR, HOA, and NAS
26   setting aside the foreclosure sale on constitutional and bankruptcy grounds; (2) breach of Nevada
27   Revised Statute ("NRS") 116.1113 against Buena Vista; (3) wrongful foreclosure against Buena

**James C. Mahan**
**U.S. District Judge**

- 2 -

Vista and NAS; (4) injunctive relief against SFR; and (5) unjust enrichment against NAS. (ECF No. 79).

BANA's corresponding motion for summary judgment argues that its tender was sufficient to redeem its senior position; the foreclosure sale was commercially unreasonable; SFR is not a *bona fide* purchaser; *SFR Investments Pool 1, LLC v. US Bank, N.A.*, 334 P.3d 408 (2014), should not be applied retroactively; the state-law grounds for the foreclosure sale give way to federal interests; and NRS chapter 116 is facially unconstitutional. (ECF No. 110).

SFR's motion for summary judgment asserts that the first deed of trust was extinguished by the non-judicial foreclosure sale; BANA should not enjoy an equitable remedy; title has vested with SFR for lack of evidence showing fraud, unfairness, or oppression; SFR is a *bona fide* purchaser; the original borrower's interest is extinguished; FHA insurance makes no difference in this case; and plaintiff's *lis pendens* on the property should be expunged. (ECF No. 111).

## II.   Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480

1  (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing
2  the absence of a genuine issue of fact on each issue material to its case." *Id.*

3  By contrast, when the non-moving party bears the burden of proving the claim or defense,
4  the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential
5  element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed
6  to make a showing sufficient to establish an element essential to that party's case on which that
7  party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving
8  party fails to meet its initial burden, summary judgment must be denied and the court need not
9  consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–
10 60 (1970).

11 If the moving party satisfies its initial burden, the burden then shifts to the opposing party
12 to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*
13 *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the
14 opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient
15 that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
16 versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626,
17 630 (9th Cir. 1987).

18 The Ninth Circuit has held that information contained in an inadmissible form may still be
19 considered for summary judgment if the information itself would be admissible at trial. *Fraser v.*
20 *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410,
21 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to
22 produce evidence in a form that would be admissible at trial, as long as the party satisfies the
23 requirements of Federal Rules of Civil Procedure 56.")).

24 **III.   Discussion**

25     *a.*  SFR Investments' *retroactivity*

26 As an initial matter, BANA argues in its motion for summary judgment that *SFR*
27 *Investments* should not be applied retroactively. (ECF No. 110).

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*"). Thus, *SFR Investments* applies to this case. Accordingly, the court rejects BANA's argument as to this question.

    b. Constitutional validity of sale

        1. Supremacy clause

Under the property clause of the United States Constitution, only "Congress shall have the power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States . . . ." U.S. Const. Art. IV, § 3, cl. 2. The supremacy clause provides that the "Constitution . . . shall be the supreme law of the land . . . ." U.S. Const. Art. VI, cl. 2. "State legislation must yield under the Supremacy Clause of the Constitution to the interests of the federal government when the legislation as applied interferes with the federal purpose or operates to impede or condition the implementation of federal policies and programs." *Rust v. Johnson*, 597 F.2d 174, 179 (9th Cir. 1979).

In *Rust*, the Ninth Circuit held that a city's foreclosure on property insured by the Federal National Mortgage Association was invalid under the supremacy clause. The court reasoned that upholding the sale "would run the risk of substantially impairing the Government's participation in the home mortgage market and of defeating the purpose of the National Housing Act." *Id.*

On this basis, courts consistently apply federal law, ignoring conflicting state law, when determining rights related to federally owned and insured loans. *United States v. Stadium Apartments, Inc.*, 425 F.2d 358, 362 (9th Cir. 1970) (holding that federal law applies to mortgages

1  insured by the Federal Housing Administration ("FHA") "to assure the protection of the federal
2  program against loss, state law to the contrary notwithstanding"); *see also United States v. Victory*
3  *Highway Vill., Inc.*, 662 F.2d 488, 497 (8th Cir. 1981) (citing Ninth Circuit case law) ("We note
4  that federal law, not [state] law, governs the rights and liabilities of the parties in cases dealing
5  with the remedies available upon default of a federally held or insured loan.").  Foreclosure on
6  federal property is prohibited where it interferes with the statutory mission of a federal agency.
7  *See United States v. Lewis Cnty.*, 175 F.3d 671, 678 (9th Cir. 1999) (holding that the state could
8  not foreclose on federal Farm Service Agency property for non-payment of taxes).

9  Indeed, federal district courts in this circuit have set aside HOA foreclosure sales on
10  supremacy clause grounds in cases involving federally insured loans.  *Saticoy Bay LLC, Series*
11  *7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, No. 2:13-cv-1199-JCM-VCF, 2015 WL
12  1990076, at *1 (D. Nev. Apr. 30, 2015); *see also Sec'y of Hous. & Urban Dev. v. Sky Meadow*
13  *Ass'n*, 117 F. Supp. 2d 970, 982 (C.D. Cal. 2000) (voiding HOA's non-judicial foreclosure on
14  HUD property, quieting title in HUD's favor based on property and supremacy clauses); *Yunis v.*
15  *United States*, 118 F. Supp. 2d 1024, 1027, 1036 (C.D. Cal. 2000) (voiding HOA's non-judicial
16  foreclosure sale of property purchased under veteran's association home loan guarantee program);
17  *Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014
18  WL 4798565, at *6 (D. Nev. Sept. 25, 2014) (holding that property and supremacy clauses barred
19  foreclosure sale where mortgage interest was federally insured).

20  The single-family mortgage insurance program allows FHA to insure private loans,
21  expanding the availability of mortgages to low-income individuals wishing to purchase homes.
22  *See Sky Meadow Ass'n*, 117 F. Supp. 2d at 980–81 (discussing program); *Wash. & Sandhill*
23  *Homeowners Ass'n*, 2014 WL 4798565, at *1 n.2 (same).  If a borrower under this program
24  defaults, the lender may foreclose on the property, convey title to HUD, and submit an insurance
25  claim.  24 C.F.R. 203.355.  HUD's property disposition program generates funds to finance the
26  program.  *See* 24 C.F.R. § 291.1.

27  However, the instant claims to quiet title are not directed at FHA.  *See* (ECF Nos. 41, 79).
28  Therefore, this court finds that plaintiff does not have standing to assert this claim under the

**James C. Mahan**
**U.S. District Judge**

- 6 -

supremacy clause. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, 200 F. Supp. 3d 1141, 1162–64 (D. Nev. 2016); *Freedom Mortg. Corp. v. Las Vegas Dev. Grp., LLC*, 106 F. Supp. 3d 1174, 1177 (D. Nev. 2015); *see also Bank of America, N.A. v. Hollow de Oro Homeowners Association, et al.*, No. 2:16-CV-675-JCM-VCF, 2017 WL 936633, at *3 (D. Nev. Mar. 9, 2017).

## 2. Due process

BANA next asserts that the foreclosure sale violated its right to due process through a lack of notice stemming from NRS Chapter 116, which governs HOA non-judicial foreclosure sales. *See* (ECF No. 110).

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required an HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley Court Trust v. Wells Fargo Bank, NA*, 832 F.3d 1154, 1157–58 (9th Cir. 2016) ("*Bourne Valley*").

Therefore, this court declines to follow the Nevada Supreme Court's recent decision in *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortg.*, 388 P.3d 970 (Nev. 2017), as clear, recent, and binding precedent exists to resolve this issue. *See Bourne Valley*, 832 F.3d at 1157–58.

The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). 832 F.3d at 1158. At issue there is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. Indeed, due process requires "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1158 (citing *Mennonite*, 462 U.S. 791, 795 (1983) (quotation omitted)).

BANA's argument, however, is unavailing. (ECF No. 110). Here, BANA has not suffered an injury related to the unconstitutional provision in NRS 116.31163(2). To raise a question of constitutionality, the party must have sufficient Article III standing, including, *inter alia*, a "personal injury fairly traceable to the . . . allegedly unlawful conduct." *Raines v. Byrd*, 117 U.S.

James C. Mahan
U.S. District Judge

- 7 -

811, 818–19 (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)) (emphasis omitted). Importantly, the Ninth Circuit has held that receipt of actual notice deprives a claimant of standing to raise a procedural due process claim. *Wiren v. Eide*, 542 F.2d 757, 762 (9th Cir. 1976).

Here, adequate notice was given to the interested parties prior to extinguishing a property right. For example, SFR provides evidence that the notice of foreclosure sale was sent to several BANA addresses by certified mail. (ECF No. 111-1 at 175–183). Moreover, its actual knowledge of the HOA's actions against the property is clear; BANA argues that it attempted tender to satisfy the HOA lien before the sale. *See* (ECF No. 110).

As a result, is it clear that BANA had actual notice that its interest was subject to pendency of action. In sum, BANA's constitutional grounds for setting aside the foreclosure sale are unpersuasive.

  *c.  Exhaustion*

The court has reviewed the exhibits submitted on the record in this case and did not find evidence that the parties have conducted the statutorily mandated Nevada Real Estate Division ("NRED") mediation. Section 38.310 of the Nevada Revised Statutes ("NRS") provides, in relevant part:

> No civil action based upon a claim relating to [t]he interpretation, application or enforcement of any covenants, conditions or restrictions applicable to residential property . . . or [t]he procedures used for increasing, decreasing or imposing additional assessments upon residential property, may be commenced in any court in this State unless the action has been submitted to mediation.

Nev. Rev. Stat. § 38.310(1). Subsection (2) continues, mandating that a "court shall dismiss any civil action which is commenced in violation of the provisions of subsection 1."[2] Nev. Rev. Stat. § 38.310(2).

Subsection (1) of NRS 38.330 states that "[u]nless otherwise provided by an agreement of the parties, mediation must be completed within 60 days after the filing of the written claim." Nev. Rev. Stat. § 38.330(1). However, while NRS 38.330(1) explains the procedure for mediation, NRS

---

[2] NRS 38.300 defines a "civil action" as "an action for money damages or equitable relief." Nev. Rev. Stat. § 38.300.

James C. Mahan
U.S. District Judge

- 8 -

38.310 is clear that no civil action may be commenced "unless the action has been submitted to mediation." NRS 38.310. Specifically, NRS 38.330(1) offers in relevant part:

> If the parties participate in mediation and an agreement is not obtained, any party may commence a civil action in the proper court concerning the claim that was submitted to mediation. **Any complaint filed in such an action must contain a sworn statement indicating that the issues addressed in the complaint have been mediated** pursuant to the provisions of NRS 38.300 to 38.360, inclusive, but an agreement was not obtained.

Nev. Rev. Stat. § 38.330(1) (emphasis added).

There is no indication on the record that the Nevada Real Estate Division's ("NRED") mandatory mediation has been completed. Thus, unless NRED appoints a mediator or the parties agree on one, plaintiff's claims—those that are subject to NRS 38.310—are unexhausted under state law.[3]

### 1. Breach of NRS 116.1113

NRS 116.1116 states: "Every contract or duty governed by this chapter imposes an obligation of good faith in its performance or enforcement." Notably, BANA alleges that the HOA "breached its duty of good faith by not complying with the obligations in the CC&Rs that its lien would be subordinate to the senior deed of trust, by not informing BANA its representation in the CC&Rs regarding the priority of liens was false." (ECF No. 79 at 28). Therefore, this court would have to evaluate the applicable CC&Rs to determine the duties that could be basis for the claim. *See McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 558 (Nev. 2013). Accordingly, this claim is dismissed as unexhausted.

### 2. Wrongful foreclosure

"A wrongful foreclosure claim challenges the authority behind the foreclosure, not the foreclosure act itself." *McKnight Family, L.L.P.*, 310 P.3d at 559 (citing *Collins v. Union Fed. Sav. & Loan*, 662 P.2d 610, 623 (Nev. 1983)). "The material issue in a wrongful foreclosure claim is whether 'the trustor was in default when the power of sale was exercised.'" *Turbay v. Bank of Am., N.A.*, No. 2:12–CV–1367–JCM–PAL; 2013 WL 1145212, at *4 (quoting *Collins*, 662 P.2d at 623). "Deciding a wrongful foreclosure claim against a homeowners' association involves

---

[3] The statute of limitations for any claim submitted to NRED for mediation is tolled until the conclusion of mediation. *See* Nev. Rev. Stat. § 38.350.

interpreting ["CC&Rs"] applicable to residential property." *McKnight Family, L.L.P.*, 310 P.3d at 559. "This type of interpretation falls under NRS 38.310." *Id.* More applicable here, NRS 38.310 also applies to laws "contain[ing] conditions and restrictions applicable to residential property." *Id.* at 558.

Here, BANA alleges that "[b]ecause [the HOA] violated the representation in the CC&Rs that its lien would be subordinate to a senior deed of trust, the foreclosure was wrongful to the extent any defendant contends it extinguished the senior deed of trust." (ECF No. 79 at 29). Therefore, this claim will also be dismissed as unexhausted. *See McKnight Family, L.L.P.*, 310 P.3d at 559.

### 3. *Injunctive relief*

BANA asserts, *inter alia*, that it "is entitled to a preliminary injunction prohibiting SFR, or its successors, assigns, or agents, from conducting any sale, transfer, or encumbrance of the property that is claimed to be superior to the senior deed of trust or not subject to the senior deed of trust." (ECF No. 79 at 30). Similarly, SFR alleges that it "is entitled to a preliminary injunction and permanent injunction prohibiting Defendants from any sale or transfer that would affect the title to the Property." (ECF No. 41 at 12).

The court finds no sustainable cause of action for injunctive relief. In fact, injunctive relief is a remedy, not a cause of action. *See, e.g.*, *Ajetunmobi v. Clarion Mortg. Capital, Inc.*, 595 Fed. Appx. 680, 684 (9th Cir. 2014) (citation omitted). Therefore, the court will dismiss both claims for injunctive relief.

### 4. *Unjust enrichment*

"Unjust enrichment is the 'unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Galvan v. J.C.H. Enters., Inc.*, 2011 WL 4501083, No. 2:11-cv-00307-RLH-GWF, at *3 (D. Nev. Sept. 27, 2011) (quoting *Asphalt Prods. Corp. v. All Star Ready Mix*, 898 P.2d 699, 701 (Nev. 1995)). To state a valid claim for unjust enrichment, a plaintiff must allege three elements: (1) plaintiff conferred a benefit on defendant; (2) defendant appreciated such

benefit; and (3) defendant accepted and retained the benefit. *Id.* (citing *Topaz Mutual Co. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992)).

Here, the court must consider the underlying CC&Rs when adjudicating this claim because it must evaluate, as a necessary precursor to evaluating some of plaintiff's asserted grounds for this claim, the obligation to pay the relevant HOA assessments. *See* (ECF No. 79). Therefore, this claim is dismissed as unexhausted. *See McKnight Family, L.L.P.*, 310 P.3d at 559.

### 5. Quiet title

A claim to quiet title does not need to be mediated because it is not a civil action under NRS 38.300(3), which states: "The term does not include an action in equity for injunctive relief in which there is an immediate threat of irreparable harm, or an action relating to the title to residential property." *See, e.g.*, *U.S. Bank, Nat. Ass'n v. NV Eagles, LLC*, No. 2:15-CV-00786-RCJ-PAL, 2015 WL 4475517, at *3 (D. Nev. July 21, 2015) (finding that a lender's claim seeking both quiet title and declaratory relief was exempt from the mediation requirement of NRS 38.310); *see also McKnight Family, L.L.P.*, 310 P.3d at 559.

#### A.  Bankruptcy stay

SFR is correct that there is no evidence submitted with this motion for summary judgment elucidating critical details, such as the applicable dates of initiation or conclusion of bankruptcy proceedings or the identity of the relevant trustee, that would allow the court to assess a supposed violation of an automatic stay. (ECF No. 114). Indeed, it appears that BANA's line of argument here falls short of Federal Rule of Civil Procedure 56(c)(1)'s requirement that an assertion of fact—such as the HOA sale taking place during an automatic stay—must be supported by relevant citation. Therefore, this argument is unpersuasive.

#### B.  Tender

SFR seeks to quiet its title in the property. (ECF No. 41). While this court will analyze the bank's equitable arguments under quiet title, this court notes that the failure to utilize legal remedies makes granting equitable remedies unlikely. *See Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*, 646 P.2d 549, 551 (1982) (declining to allow equitable relief

**James C. Mahan**
**U.S. District Judge**

- 11 -

1   because an adequate remedy existed at law). Simply ignoring legal remedies does not open the
2   door to equitable relief.
3       Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority
4   portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest.
5   *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior
6   lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see*
7   *also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149
8   (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their
9   security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of*
10  *Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev.
11  1980))).
12      BANA's pre-foreclosure actions doom its hope of preventing SFR from quieting title in
13  this case. *See* (ECF Nos. 111-1, 111-2). This court has previously confronted this issue—and
14  answered in the negative—whether a holder of a deed of trust in Nevada may: (1) attempt to
15  calculate, on its own and in spite of an HOA trustee's provision of a payoff ledger, the balance of
16  an HOA lien that the holder needed to satisfy to prevent a non-judicial foreclosure sale, and then
17  (2) subsequently claim that the rejection of tender for that amount is grounds to set aside a
18  subsequent non-judicial foreclosure sale. *See, e.g.*, *Deutsche Bank Nat'l Trust Co. v. Talasera &*
19  *Vicanto Homeowners' Ass'n*, No. 2:15-cv-01139-JCM-PAL, 2017 WL 736879, at *8 (D. Nev.
20  Feb. 24, 2017); *see also* (ECF Nos. 110, 111).
21      Additionally, on the face of BANA's motion, it is clear that the attempted calculation of
22  tender was incorrect. *See* (ECF No. 110) ("Based on the $63.50 monthly assessment amounts
23  identified in Buena Vista's ledger, BANA calculated the super-priority amount owed to the HOA,
24  the sum of nine-months of common assessments, as $571.50 and tendered that amount to Buena
25  Vista on August 5, 2011.").
26      *SFR Investments* is clear in its holding that the superpriority portion of the HOA lien
27  consists of more than just "the last nine months of unpaid HOA dues." 334 P.3d at 411. Indeed,
28  the superpriority lien portion consists of "the last nine months of unpaid HOA dues ***and***

James C. Mahan
U.S. District Judge

- 12 -

*maintenance and nuisance-abatement charges*," while the subpriority piece consists of "all other HOA fees or assessments." *Id.* (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162."). Accordingly, this argument fails. As these events occurred prior to the property sale, the court weighs them heavily in its consideration of equity.

### C. Commercial unreasonability

BANA contends that judgment in its favor is appropriate because the sale of the property for under 8% of its fair market value is grossly inadequate as a matter of law. (ECF No. 110). BANA further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in setting aside a sale where the price is less than 20 percent of fair market value." (ECF No. 110 at 9) (emphasis omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[4]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58

---

[4] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

(D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite BANA's suggestion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *and Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *and Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test—which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale—controls. *See* 639 P.2d at 530.

Here, BANA claims evidence that the CC&Rs represented to the public that any HOA assessment would be subordinate to the first deed of trust, which it asserts "necessarily chilled bidding and resulted in unfairness." (ECF No. 110 at 11); *see also* (ECF No. 110–12). BANA cites to this court's decision in *ZYZZX2 v. Dizon*, No. 2:13-cv-01307-JCM-PAL, 2016 WL 1181666 (D. Nev. Mar. 25, 2016), to support its argument.[5]

---

[5] Notably, BANA develops no argument in its motion regarding fraud. *See C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480.

**James C. Mahan**
**U.S. District Judge**

- 14 -

SFR's response differentiates that case from the present one as follows:

> *ZYZZX2* is distinguishable because there the association had "sent a letter to the lender and other interested parties stating that its foreclosure would not affect the senior lender/mortgage holder's lien[,]" and that the lender relied on this in determining it had no duty to protect its interest. Here there is no such letter in the evidence.

(ECF No. 114 at 18) (alteration in original) (citation omitted) (asserting a theory of unfairness). Indeed, that decision was rendered in light of the combination of the mortgage protection clause and the HOA's misleading mailings. *See ZYZZX2*, 2016 WL 1181666 at *4–5. As indicated by SFR, unlike in *ZYZZX2*, the HOA and its trustee here made it clear, before the presently attacked sale took place, that BANA's interest in the property was not safe. *See id.*; *see also* (ECF Nos. 110, 14).

Additionally, SFR argues that NRS 116.1104 generally "rendered said mortgage protection clauses invalid." (ECF No. 114 at 18). Indeed, that statute states "[e]xcept as expressly provided in this chapter, its provisions may not be varied by agreement, and rights conferred by it may not be waived." Nev. Rev. Stat. § 116.1104. Further, BANA fails to address this argument in its reply.

It has generally been accepted in the United States' jurisprudence that individuals know the law. *See, e.g.*, *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 625 (2010). Accordingly, this court will presume here that those examining CC&Rs in preparation to bid on a property are aware of NRS 116.1104. Thus, BANA's present lack of evidence showing that bidders were dissuaded from attempting to purchase the property, as well as a dearth of analysis regarding potential inapplicability of NRS 116.1104, concludes the present discussion in favor of SFR. *See C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480.

### D. Bona fide *purchaser*

Moreover, when sitting in equity, "courts must consider the entirety of the circumstances . . . . This includes considering the status and actions of all parties involved including whether an innocent party may be harmed by granting the desired relief." *Shadow Wood*, 366 P.3d at 1114 (citation omitted). The issue of *bona fide* purchaser ("BFP") status is distinct from that of the conclusiveness of deed recitals. Specifically, the issue of BFP status "concerns a buyer's knowledge of competing interests," whereas the other "concerns a statutory presumption that can

be equitably overcome under *Shadow Wood*." *See, e.g.*, *Nationstar Mortg., LLC*, 184 F. Supp. at 859.

A BFP is a person who purchases real property "for a valuable consideration and without notice of the prior equity, and without notice of facts which upon diligent inquiry would be indicated and from which notice would be imputed to him, if he failed to make such inquiry." *Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947) (emphasis omitted); *see also Moore v. De Bernardi*, 220 P. 544, 547 (Nev. 1923) ("The decisions are uniform that the bona fide purchaser of a legal title is not affected by any latent equity founded either on a trust, [e]ncumbrance, or otherwise, of which he has no notice, actual or constructive."). Under Nevada law, "bona fide purchaser" means as follows:

> Any purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bona fide purchaser.

Nev. Rev. Stat. § 111.180(1). "In other words, a later-obtained interest can prevail over an earlier-obtained interest where the later purchaser has no knowledge of the previous interest and records his interest first." *See Nationstar Mortg., LLC*, 184 F. Supp. 3d at 860.

Here, SFR argues that it paid value for the property and took without notice of a competing or superior interest in the property at the time of the foreclosure sale. (ECF No. 111 at 17–19). Further, BANA provides no competent evidence sufficient to raise a genuine dispute as to SFR's status as a BFP. Rather, BANA merely asserts without adequate support that SFR is a professional property purchaser and concludes that such basis alone is sufficient to preclude SFR's status as a BFP. (ECF No. 110 at 12–15). Such conclusory allegations without specific facts supported by competent evidence are insufficient to raise a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

In consideration of all of the arguments and the discussion above, this court holds that BANA has not shown that its failure to exercise appropriate pre-foreclosure remedies is countervailed by other considerations. Thus, title will be quieted in favor of SFR, and the *lis pendens* will be expunged.

. . .

**James C. Mahan**
**U.S. District Judge**

*d. Motion to certify*

Finally, SFR requests that the court certify the following question to the Nevada Supreme Court: "Whether NRS § 116.31168(1)'s incorporation of NRS § 107.090 requires homeowners' associations to provide notices of default to banks even when a bank does not request notice?" (ECF No. 127 at 2–3).

The court declines to certify this question as controlling precedent is available for guidance. The Ninth Circuit, in *Bourne Valley*—which SFR cites to in its motion—expressly answered this exact question in the negative. More specifically, the Ninth Circuit held, in relevant part, as follows:

> Bourne Valley argues that Nevada Revised Statute section 116.31168(1), which incorporated section 107.090, mandated actual notice to mortgage lenders whose rights are subordinate to a homeowners' association super priority lien. . . . According to Bourne Valley, this incorporation of section 107.090 means that foreclosing homeowners' associations were required to provide notice to mortgage lenders even absent a request.
> . . . .
> If section 116.31168(1)'s incorporation of section 107.090 were to have required homeowners' associations to provide notice of default to mortgage lenders even absent a request, section 116.31163 and section 116.31165 would have been meaningless. We reject Bourne Valley's argument.

*Bourne Valley*, 832 F.3d at 1159.

Accordingly, the court will deny SFR's motion to certify this question to the Nevada Supreme Court.

**IV.   Conclusion**

In sum, the foreclosure sale did not violate BANA's asserted constitutional rights; the claims of breach of NRS 116.1113, wrongful foreclosure, and unjust enrichment will be dismissed as unexhausted; all claims for injunctive relief will be dismissed; title will be quieted on behalf of SFR; and BANA's *lis pendens* will be expunged. Finally, SFR's motion to certify will be denied.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that BANA's motion for summary judgment (ECF No. 110) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that BANA's claims of breach of NRS 116.1113, wrongful foreclosure, and unjust enrichment be, and the same hereby are, DISMISSED as unexhausted.

James C. Mahan
U.S. District Judge

- 17 -

1     IT IS FURTHER ORDERED that all claims for injunctive relief be, and the same hereby
2 are, DISMISSED.
3     IT IS FURTHER ORDERED that SFR's motion for summary judgment (ECF No. 111)
4 be, and the same hereby is, GRANTED IN PART and DENIED IN PART, consistent with the
5 foregoing.
6     IT IS FURTHER ORDERED that BANA's *lis pendens* on the property be, and the same
7 hereby is, EXPUNGED.
8     IT IS FURTHER ORDERED that SFR's motion to certify a question of law to the Nevada
9 Supreme Court (ECF No. 127) be, and the same hereby is, DENIED.
10     The clerk shall enter judgment accordingly and close the case.
11     DATED March 22, 2017.

                                                                                                                                               */s/ James C. Mahan*
                                                UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**